# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### DELTA DIVISION

MAURICE SMITH                                                                    PLAINTIFF

V.                                                            CAUSE NO.: 2:07CV51-SA-SAA

NORTH BOLIVAR SCHOOL DISTRICT, et al.                                DEFENDANTS

## MEMORANDUM OPINION

This cause comes on for consideration on Motion to Dismiss [30] filed by Defendants, Mississippi State Department of Education ("MDE"), Dr. Hank M. Bounds, Ms. Paula Means, and Mr. Howard Sanders (the "State Defendants"). Also in front of the Court is a Motion to Dismiss [33] under Federal Rule of Civil Procedure 12(b)(6) by Defendants North Bolivar School District, Bobbie Reid, Jefferick Butler, William Prince, Mary Collier, and Emma Williams (the "School Defendants"). The Court finds the following:

### Factual and Procedural Background

The plaintiff Maurice Smith brings this suit, filed on March 27, 2007, against the above mentioned. Plaintiff alleges a variety of claims arising out of North Bolivar School District's ("NBSD") termination of Smith as superintendent in December, 2005. Specifically, Smith alleges violations of 42 U.S.C. § 1983, 1985, and 1986, the First and Fourteenth Amendments, tortious breach of contract, and a host of state law claims. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and injunctive relief.

As noted above, the State Defendants filed a motion to dismiss averring that in their official capacities, they were cloaked in sovereign immunity pursuant to the Eleventh Amendment. Moreover, they assert they are entitled in their individual capacities to qualified immunity.

The School Defendants argue that Plaintiff has failed to state a claim for relief under 42 U.S.C. §§ 1985 and 1986. Moreover, these Defendants allege that Plaintiff has failed to sufficiently plead a cause of action under 42 U.S.C. § 1983, the First Amendment, the Fourteenth Amendment, and the Mississippi Tort Claims Act. The State Defendants filed a joinder in this motion, so the arguments will be considered as to those defendants as well.

Plaintiff failed to respond to the State Defendants' Motion to Dismiss. This reason alone is grounds to grant the motion pursuant to Local Rule 7.2(c)(2) ("If a party fails to respond to any motion, other than a motion for summary judgment, within the time allotted, the court may grant the motion as unopposed."). However, plaintiff did include in its response to the School Defendants' Motion to Dismiss some arguments relating to the initial motion to dismiss. Thus, those arguments will be addressed here.

*Motion to Dismiss Standard*

A Rule 12(b)(6) motion is disfavored, and it is rarely granted. Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986); Sosa v. Coleman, 646 F.2d 991, 993 (5th Cir. 1981). Dismissal is never warranted because the court believes the plaintiff is unlikely to prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). Even if it appears an almost certainty that the facts alleged cannot be proved to support the claim, the complaint cannot be dismissed so long as the complaint states a claim. Clark, 794 F.2d at 970; Boudeloche v. Grow Chem. Coatings Corp., 728 F.2d 759, 762 (5th Cir. 1984).

"To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief." Clark, 794 F.2d at 970; see also Mahone v. Addicks Util. Dist., 836 F.2d 921, 926 (5th Cir. 1988); United States v. Uvalde Consol. Indep. Sch. Dist., 625 F.2d 547, 549 (5th Cir. 1980), cert.

denied, 451 U.S. 1002, 68 L. Ed. 2d 858, 101 S. Ct. 2341 (1981). Dismissal is appropriate only when the court accepts as true all well-pled allegations of fact and, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Thomas v. Smith, 897 F.2d 154, 156 (5th Cir. 1989); Conley v. Gibson, 355 U.S. 41, 45-6, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); see Mahone, 836 F.2d at 926; McLean v. International Harvester, 817 F.2d 1214, 1217 n.3 (5th Cir. 1987); Jones v. United States, 729 F.2d 326, 330 (5th Cir. 1984).

While dismissal under Rule 12(b)(6) ordinarily is determined by whether the facts alleged, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings. Clark, 794 F.2d at 970; Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982), cert. denied, 459 U.S. 1105, 103 S. Ct. 729, 74 L. Ed. 2d 953 (1983).

*Discussion and Analysis*

*A.  Eleventh Amendment*

Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction from hearing a suit against a state.  Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).  Specifically, the Eleventh Amendment bars suits against states for money damages.  See Nelson v. Univ. of Tex., 535 F.3d 318, 321 (5th Cir. 2008).  However, the Eleventh Amendment does not bar suits for prospective relief against a state employee acting in his official capacity.  Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908); Brennan v. Stewart, 834 F.2d 1248, 1253 (5th Cir. 1988). The Ex parte Young doctrine holds that acts by state officials which are contrary to federal law cannot have been authorized or be ratified by the state; and suits seeking to enjoin such wrongful and unauthorized acts are not suits against the state and

a federal courts' injunction against such wrongful acts is not a judgment against the state itself. The essential ingredients of the Ex parte Young doctrine are that a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect.

In the plaintiff's complaint, he prays specifically for "injunctive relief where appropriate against the officials of the NBSD and MDE." Clearly the nature of the relief sought by the plaintiff would qualify as part of the Ex parte Young doctrine. The complaint is less clear as to whether that relief is sought against MDE or the officials of MDE. Because this is a motion to dismiss and the standard favors the plaintiff in the reading of the complaint, the Court construes Plaintiff's request for injunctive relief to be sought against the officials of MDE. Thus, the Ex parte Young exception applies to the State Defendants. Therefore, the plaintiff's claims for injunctive relief and attorneys' fees survive as to the official capacity claims against Hank Bounds, Howard Sanders, and Paula Means, but the Plaintiff's claims for money damages against the State Defendants in their official capacities fail.

*B. State Law Claims*

Defendants also allege that under the Mississippi Tort Claims Act, the government entities and employees working in their official capacity retain absolute immunity for claims arising from discretionary functions. That statute, Mississippi Code Section 11-46-9(1)(d) states:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion is abused.

In <u>Jones v. Mississippi Department of Transportation</u>, 744 So.2d 256, 260 (Miss. 1999), the Mississippi Supreme Court adopted a two-part public policy function test for determining whether governmental conduct is protected by discretionary function immunity. <u>Id</u>. The test provides that, in determining whether governmental conduct is afforded discretionary function immunity, the court first must decide whether the activity involved an element of choice or judgment, and, if so, whether the choice involved social, economic, or political policy. <u>Id</u>. Under the discretionary function exemption, "only those functions which by nature are policy decisions, whether made at the operational or planning level, are protected." <u>Id</u>. (citing <u>U.S. v. Gaubert</u>, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)). "The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." <u>Id</u>.

Under the first part of the test, an act is not discretionary, but is ministerial, if "the duty is one which has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." <u>Stewart ex rel. Womack v. City of Jackson</u>, 804 So. 2d 1041, 1048 (Miss. 2002) (citations omitted).

Here, the Plaintiff was subjected to a recall pursuant to Mississippi Code Section 37-18-7. That Statute specifically requires that if more than fifty percent of the schools within the school district are designated as "at risk" in any one year, the State Board of Education may issue a written request with documentation to the Governor asking that the office of the superintendent be subject to recall. Miss. Code Ann. § 37-18-7(4)(c). Once the Governor issued the "state of emergency" for the North Bolivar School District, the local school board was required to vote whether the

superintendent was retained in office or dismissed from office pursuant to the request made by the State Board of Education. See Miss. Code Ann. § 37-18-7(4)(c)(ii).

Plaintiff asserts that the defendants have breached his contract and caused him other harm by engaging in the recall and voting for his dismissal. The recall was instituted by Hank Bounds and the Mississippi Department of Education who were charged with establishing, designing, and implementing a system to identify schools at risk of falling below federally mandated achievement levels. Miss. Code Ann. § 37-18-3. The statute also outlines explicit steps the Superintendent and State Board of Education must take to ensure that plans for improvement at those schools are devised and implemented. Thus, Mississippi Code Section 37-18-7 provides the procedures and consequences for those schools, superintendents of those schools, and the local school boards, if those schools identified as "at risk" do not increase their performance for a certain period of time. If the "Schools At-Risk" do not show improvement, the State Department of Education must evaluate the improvement plans, the funds provided to improve performance, and other steps taken to determine whether further action is needed to spur academic achievement. Mississippi Code Section 37-18-7 gives the State Board of Education the authority to evaluate those school districts defined as "at risk" and suggest to the Governor if the superintendent or local school board should be recalled. Thus, the Mississippi Department of Education and Hank Bounds used their judgment to determine whether the North Bolivar School District's superintendent should be recalled pursuant to the "state of emergency" declared by the Governor. As such, the MDE and Hank Bounds were performing discretionary functions impacting a social, economic, and political policy.

The NBSD school board was statutorily required to vote whether to retain or dismiss the Superintendent pursuant to the orders from the MDE and the Governor. That decision required

independent judgment and subjective evaluations on each board members part. The Mississippi Supreme Court has recognized that employment decisions are discretionary. See Levens v. Campbell, 733 So. 2d 753, 764 (1999) (noting that "duties as to employee hiring were discretionary"). Thus, NBSD and the school board members, acting in the course and scope of their duties, performed a discretionary function in determining whether the NBSD Superintendent should be retained, regardless of the school district's poor performance and low accreditation scores.

Therefore, the MDE, Hank Bounds, Howard Sanders, Paula Means, NBSD, Bobbie Reid, Jefferick Butler, William Prince, Mary Collier, and Emma Williams cannot be held liable for any state law tort actions against them in their official capacity as they were all performing discretionary functions in the course and scope of their job duties.

Further, defendants assert that the officials sued in their individual capacities cannot be held personally liable pursuant to Mississippi Code Section 11-46-7(2). That Section specifically states:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

As noted in the above analysis, all discretionary actions taken were performed within the course and scope of the individual board members and MDE employees employment duties. However, as allowed by this statute, the individual defendant may be held liable under the MTCA for state law claims constituting malice, libel, slander, defamation or any criminal offense. Plaintiff, by letter attached to his complaint, outlines that he "intends to bring claims for defamation,

conspiracy, slander, tortuous [sic] breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of contract surrounding his wrongful termination in December 2005." Therefore, to the extent that the individuals were sued for defamation and slander, they do not have immunity under the Mississippi Tort Claims Act.

*C. 42 U.S.C. Sections 1985 and 1986*

The defendants also request by motion to dismiss that Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims be dismissed for failing to state a claim for which relief can be granted. The State Defendants also contend that a Section 1986 claim would be barred by the statute of limitations in that section. Notably, the plaintiff failed to address this allegation in his response to that motion. Finding that plaintiff has failed to state a claim for violations of Sections 1985 and 1986, this Court grants the defendants' request.

42 U.S.C. Section 1985 provides:

If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

In order to state a cause of action under this clause, a plaintiff must allege: (1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial or class-based animus. Wong v. Stripling, 881 F.2d 200, 202-03 (5th Cir. 1989); Bray v.

8

Alexandria Women's Health Clinic, 506 U.S. 263, 271-72, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993) (holding that discriminatory animus "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group") (citation omitted).

Plaintiff has failed to contend that the actions of the alleged conspirators was motivated by any animus based on a particular classification.  See United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 838, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983) (Section 1985 does not cover "conspiracies motivated by bias towards others on account of their economic views, status, or activities."); Bray, 506 U.S. 263, 113 S. Ct. 753 (refusing to extend Section 1985 to conspiracies against women seeking abortions);  Newberry v. East Tex. State Univ., 161 F.3d 276, 281 n. 2 (5th Cir. 1998) (noting that the Supreme Court has never held that nonracial animus is sufficient under Section 1985).  As such, Plaintiff has failed to allege membership in a class recognizable under 42 U.S.C. § 1985.  Plaintiff also failed to allege specific instances that he considered examples of violations of his equal protection rights.  Accordingly, Defendant's motion to dismiss as to Plaintiff's 42 U.S.C. § 1985 case is granted as Plaintiff has failed to state a claim upon which relief can be granted.

Moreover, if the Section 1985 claim fails, so too must the Section 1986 claim.  See 42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed . . . shall be liable . . ..");  Newberry, 161 F.3d at 281.  The Court also notes that a Section 1986 claim is barred by the statute of limitations.  Section 1986 states, "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."  42 U.S.C. § 1986.

The cause of action accrued at the time the "decision was made and [defendant] was notified." Del. State College v. Ricks, 449 U.S. 250, 259, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980).

Plaintiff states in his complaint that his date of termination was on December 13, 2005. All of the allegations stem from that date or before that date. Thus, the cause of action accrued at the latest on December 13, 2005, and Plaintiff had until December 13, 2006, to file a claim under Section 1986. Plaintiff's complaint was filed on March 27, 2007. Thus, Plaintiff's claims pursuant to Section 1986 are barred by the statute of limitations referenced in 42 U.S.C. Section 1986.

*D. 42 U.S.C. Section 1983*

The Plaintiff also brings claims pursuant to 42 U.S.C. § 1983 which states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 alone does not create substantive rights. Dismukes v. Hackathorn, 802 F. Supp. 1142, 1444 (N.D. Miss. 1992). Rather, Section 1983 creates a remedy for violation of federal, constitutional, or statutory rights. Cousin v. Small, 325 F.3d 627, 631 (5th Cir. 2003). Section 1983 was designed to deter state and government actors from abusing their official positions by depriving citizens of their constitutionally protected rights and provides redress for any such deprivation. Johnston v. Lucas, 786 F.2d 1254, 1257 (5th Cir. 1986). Mere assertions that a defendant violated a plaintiff's rights are insufficient to maintain a Section 1983 claim. Dismukes, 802 F. Supp. at 1444 (citing Easterling v. Glennville, 694 F. Supp. 911, 917 (S.D. Ga. 1986)). To maintain a successful 1983 action, the Plaintiff must prove there has been (1) a deprivation of a federal right (2) that

occurred under color of state law, which (3) was caused by a state actor. <u>Victoria W. v. Larpenter</u>, 369 F.3d 475, 482 (5th Cir. 2004); <u>Phillips v. Vandygriff</u>, 711 F.2d 1217, 1221 (5th Cir. 1983).

Municipal and other political subdivision[1] liability results only if the deprivation of constitutionally protected rights was inflicted pursuant to an official policy or custom. <u>McKinney v. Irving Indep. Sch. Dist.</u>, 309 F.3d 308, 313 (5th Cir. 2002). Municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001); <u>Monell v. Dep't of Soc. Services</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. <u>Peters v. City of Biloxi</u>, 57 F. Supp. 2d 366, 376 (S.D. Miss. 1999); <u>see</u> <u>Snyder v. Trepagnier</u>, 142 F.3d 791, 798 (5th Cir. 1998); <u>Piotrowski</u>, 237 F.3d at 580 (stating that these two requirements "must not be diluted"). In order to carry this heavy burden, "the plaintiff must generally demonstrate at least a pattern of similar violations." <u>Monell</u> 436 U.S. at 691, 98 S. Ct. 2018.

The three requirements for municipal liability detailed above are necessary in order to distinguish between isolated violations committed by local employees and those violations which may be committed by the government itself. <u>Piotrowski</u>, 237 F.3d at 578. Therefore, municipalities may not be held liable for acts of lower level employees but may be held liable for constitutional violations committed pursuant to an official policy or custom. <u>Id.</u> at 578. In addition, not only must

---

[1]School boards and school districts are considered political divisions subject to liability under 42 U.S.C. Section 1983. <u>See</u> <u>Beattie v. Madison County Sch. Dist.</u>, 254 F.3d 595, 600 n.2 (5th Cir. 2001).

the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right, he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. Id. at 580.

Plaintiff has not alleged that the violations by the North Bolivar School District were pursuant to an official policy or custom. Moreover, throughout the pleadings, no NBSD policy is alluded to or acknowledged. Thus, the plaintiff has failed to raise an inference of a violation of a federal right by a state actor, and the Section 1983 claim against the NBSD is dismissed.

Plaintiff asserts four claims under 42 U.S.C. Section 1983 for holding all other defendants liable. Defendants claim they are entitled to dismissal of those claims.

**First Amendment: Free Speech and Retaliation**

"The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen on matters of public concern." Davis v. McKinney, 518 F.3d 304, 311 (5th Cir. 2008) (citing Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)). In order to state a claim for First Amendment free speech retaliation, the plaintiff must set forth sufficient allegations that "(1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) his speech motivated the employer's adverse employment action." Charles v. Grief, 522 F.3d 508, 510 n. 2 (5th Cir. 2008).

The Court will focus primarily on whether the employee spoke as a citizen on a matter of public concern. Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). Pursuant to the Supreme Court's ruling in Garcetti, this Court must evaluate the role the speaker occupied when he uttered the speech which is the alleged result of termination. Id. In other words,

first, the Court must decide whether the plaintiff was speaking as a citizen or as part of his public job, i.e., an employee. Davis, 518 F.3d at 312. Only speech uttered by a plaintiff as a "citizen" is protected by the First Amendment. Id. If the Court determines the plaintiff was not acting in his official duties, the Court then must determine if the matter is of public concern. Id. The above are used in conjunction with each other to determine whether the plaintiff was acting as a "citizen" or as an employee. See Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 366 (5th Cir. 2000). If the speaker is deemed to be a "citizen" speaking on a matter of public concern, the Court must consider the balance of "the employee's interest in expressing such a concern with the employer's interest in promoting the efficiency of the public services it performs through its employees." Id. (quoting Rona Greff Schneider, 1 Education Law: First Amendment, Due Process and Discrimination Litigation § 2:20 (West 2007)).

Thus, the Court's first task is to determine whether Smith's speech was part of his official duties. The Court in Garcetti stated, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Garcetti, 547 U.S. at 421, 422, 126 S. Ct. 1951. In Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689 (5th Cir. 2007), the Fifth Circuit held that the speech did not have to be required by the plaintiff's job duties, but instead, very closely related to them. Moreover, the Court in Davis held that "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." Davis, 518 F.3d at 312-14.

In the case at bar, the Plaintiff reported the alleged threats of his potential termination made by the NBSD board, to the Mississippi Department of Education. This reporting of the threats was

13

made to the state's educational oversight agency, the Mississippi Department of Education. Notably, the pleadings fail to mention any specified job duties of the plaintiff. Specifically, neither party states that part of the plaintiff's job duties were to report threats of the board concerning *his* job to the Mississippi Department of Education. Therefore, the Court cannot conclude that reporting to the Mississippi Department of Education was part of his job duties. In sum, for the purposes of a motion to dismiss, the pleadings are devoid of any proof that reporting to the Mississippi Department of Education was a part of the superintendent's job duties.

Although it cannot be determined whether the plaintiff acted pursuant to his job duties, it is clear that the speech was not a matter of public concern. Sanders v. Leake Co. Sch. Dist., 546 F. Supp. 2d 351, 356 (S.D. Miss. 2008) ("the fact that an employee's communication to an outside agency about job concerns is not required by her job or not closely related to the performance of her job does not necessarily mean that her communication with such agency is undertaken as a private citizen, rather than as an employee") (citing Wyckoff v. Maryland, 522 F. Supp. 2d 730, 737 (D. Md. 2007)). The Fifth Circuit has implemented two tests in order to determine if the speech is of public concern. Stotter v. Univ. of Tex. Of San Antonio, 508 F.3d 812, 825 (5th Cir. 2007); Kennedy, 224 F.3d at 366. Both of these tests derive from Connick v. Myers, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). In the first "content-form-context test," the question is "whether an employee's speech addresses a matter of public concern determined by the content, form, and context of a given statement, as revealed by the whole court record." Kennedy, 224 F.3d at 366 (quoting Connick, 461 U.S. at 147-48, 103 S. Ct. 1684). In the second test, "citizen-employee test," the employee's speech is not protected "when a public employee speaks not as a citizen on matters of public concern, but instead as an employee upon matters of only of personal interest." Connick, 461

U.S. at 147, 103 S. Ct. 1684.  As mentioned <u>supra</u>, these tests are usually used in conjunction with each other.  <u>Kennedy</u>, 224 F.3d at 366.

"When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." <u>Connick</u>, 461 U.S. at 146, 103 S. Ct. 1984. Moreover, the Court must evaluate the "purpose of the employee's speech – that is, whether [he] spoke on behalf of the public as a citizen, or whether the employee spoke for [himself] as an employee." <u>Morgan v. Ford</u>, 6 F.3d 750, 754 (11th Cir. 1993).

The plaintiff in <u>Connick</u> released a questionnaire evaluating the performance of the District Attorney.  <u>Id</u>. at 148.  The Court stated that "the questionnaire, if released to the public, would convey no information at all other than the fact that a single employee is upset with the status quo." <u>Id</u>.  This Court finds similarly that Smith's speech would "convey no information other than the fact that a single [superintendent] is upset with the [board]"; it is merely one employee reporting the "threats" of his potential firing, made by the board, to the MDE in trying to save his own job.  <u>Id</u>.; <u>compare</u> <u>Kennedy</u>, 224 F.3d at 366 (noting speech that potentially affects public safety relates to the public concern); <u>with</u> <u>Davis</u>, 518 F.3d at 312-14 (holding that lodging a complaint with the EEOC creates a "private, personal dispute between the employer and the employee[,] not . . . a generalized petition for a remedy to a public problem").

Although it is unclear, at this juncture, whether the speech is part of the plaintiff's official job duties, it is clear that the speech does not involve a matter of public concern.  The *content* of the speech involves a personal dispute with the board; the *form* of the speech which looks to be verbal

does not appear as the acts of a "citizen"; and the speech was made after an official meeting, which infers the speech was made in *context* of an employee function. In sum, this speech involves matters of a personal nature, i.e., a personal dispute between the board and the plaintiff. Thus, the plaintiff was speaking as an employee, and not as a "citizen." The Court's analysis ends here since the speech does not involve matters of public concern. Accordingly, the Court will not invoke the Pickering balancing test.

Because this speech does not involve matters of a public concern, Plaintiff has not sufficiently pled a First Amendment retaliation claim, and the defendants' motion to dismiss on this cause of action is granted.

**Fourteenth Amendment: Equal Protection**

The Plaintiff vaguely makes reference to a possible equal protection claim under Section 1983. Traditionally, an equal protection claim required that the plaintiff prove that a state actor intentionally discriminated against him because of his membership in a protected class. Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999). However, in Village of Willowbrook v. Oleck, the Supreme Court held that the Equal Protection Clause gives rise to a claim on behalf of a "class of one" when membership in a particular class is not alleged. 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). An action may be maintained under 42 U.S.C. § 1983 for violations of the equal protection clause of the Fourteenth Amendment where the Plaintiff alleges that only he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Oleck, 528 U.S. at 564, 120 S. Ct. 1073.

Plaintiff alleges in his complaint that he was treated differently than others subject to the recall vote. Specifically, he notes that the MDE's recommended "state of emergency," which

mandated the recall vote, was lifted after Plaintiff was terminated, but before the school board's recall vote was held. Plaintiff has distinctly alleged that his right to equal protection has been violated by Defendants' disparate treatment and, therefore, has stated a cause of action under 42 U.S.C. Section 1983. See Sisk v. Tex. Parks & Wildlife Dept., 644 F.2d 1056 (5th Cir. 1981).

**Fourteenth Amendment: Procedural Due Process**

Defendants assert that Plaintiff's complaint could be read to implicate potentially four procedural due process claims under 42 U.S.C. Section 1983. Therefore, Defendants contend those procedural due process claims can be dismissed for the following reasons: Plaintiff was not denied procedural due process because NBSD failed to comply with the Education Employment Procedures Law ("EEPL"); if Plaintiff is not asserting noncompliance with the EEPL, then Plaintiff has alleged insufficient facts to establish a cause of action; there is no procedural due process liberty interest based on injury to reputation and inability to find other employment; and there is no procedural due process liberty interest violation based on the right not to be terminated for exercising his First Amendment rights.

Plaintiff asserts that he was denied due process rights under the Education Employment Procedures Law ("EEPL"), Mississippi Code Section 37-9-101, *et seq.* "A right to have state (or city) laws obeyed is a state, not a federal right." McDowell v. Texas, 465 F.2d 1342, 1346 (5th Cir. 1971) (citing Love v. Navarro, 262 F. Supp. 520 (D.C. Cal.1967)). Moreover, "[m]ere violation of a State statute does not infringe the federal Constitution." McDowell, 465 F.2d at 1346 (quoting Snowden v. Hughes, 321 U.S. 1, 64 S. Ct. 397, 88 L. Ed. 497 (1944)). Thus, Plaintiff cannot rely on his claim that Defendants violated the EEPL as a source of federal due process rights.

However, in the area of public employment, the Supreme Court has held that a public college

professor dismissed from an office held under tenure provisions, <u>Slochower v. Board of Education</u>, 350 U.S. 551, 76 S. Ct. 637, 100 L. Ed. 692 (1956), and college professors and staff members dismissed during the terms of their contracts, <u>Wieman v. Updegraff</u>, 344 U.S. 183, 73 S. Ct. 215, 97 L. Ed. 216 (1952), have interests in continued employment that are safeguarded by due process. Indeed, the Supreme Court has held:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

<u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

Plaintiff had a contract of employment in force at the time of his termination; thus, under <u>Roth</u>, he may have had a right to a hearing subsequent to the alleged deprivation of his employment. Under the facts alleged in the complaint and the standard for motion to dismiss outlined above, this Court cannot say that Plaintiff has failed to state a claim for a violation of his federal procedural due process rights.

Defendants next contend that Plaintiff lacks a liberty interest based on any violation for injury to his reputation or his right not to be terminated for First Amendment purposes. The Supreme Court has noted that "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." <u>Roth</u>, 408 U.S. 564, 92 S. Ct. 2701 (citations omitted). In such a case, due process requires that the affected employee be given notice of the charges and an opportunity to clear his or her name. <u>Id</u>. at , 92 S. Ct. 2701. The Fifth Circuit explored the boundaries of the liberty interest recognized in <u>Roth</u> in

Rosenstein v. City of Dallas, 876 F.2d 392, 395 (5th Cir. 1989):

> Public officials do not act improperly in publicly disclosing charges against employees, but they must thereafter afford procedural due process to the person charged. Moreover, the process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee. If a government employer discharges an individual under circumstances that will do special harm to the individual's reputation and fails to give that individual an opportunity to clear his name, however, the individual may recover monetary damages under § 1983 for the deprivation of his liberty interest under the Fourteenth Amendment.

Id. at 395 (internal citations omitted).

However, to state a claim for deprivation of a liberty interest, the plaintiff must allege more than merely the stigma of discharge. See Wells, 736 F.2d 243, 256 (5th Cir. 1984) (Mere proof that the employment decision "might make an individual less attractive to other employers does not, by itself, implicate a liberty interest."); see also Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs., 925 F.2d 866, 878 (5th Cir. 1991). Moreover, concern about the impact of the plaintiff's discharge on his or her general reputation is not, standing alone, sufficient to give rise to the required liberty interest. See Rosenstein, 876 F.2d at 395 n.1; In re Selcraig, 705 F.2d 789, 795-96 (5th Cir. 1983); White v. Thomas, 660 F.2d 680, 684 (5th Cir. 1981). To the contrary, "a constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." White, 660 F.2d at 684; see also Moore, 871 F.2d at 550; Wells, 736 F.2d at 256. The plaintiff's claim may be somewhat premised upon such a deprivation of liberty. Plaintiff maintains that he has been unable to find employment in either Mississippi or Alabama due to his termination and resultant injury to his reputation.

Plaintiff has sufficiently pled that the damage to his reputation was a result of defendants'

violating his procedural due process. The Court notes here that defendants argue that to prevail on his Section 1983 claim that the defendants infringed upon a cognizable liberty interest by denying him the opportunity to clear his name, the plaintiff must show: (1) that he was discharged; (2) that stigmatizing charges were made against him in connection with the discharge; (3) that the charges were false; (4) that he was not provided notice or an opportunity to be heard prior to his discharge; (5) that the charges were made public; (6) that he requested a hearing to clear his name; and (7) that the employer refused his request for a hearing. See Rosenstein, 876 F.2d at 395-96; Moore, 871 F.2d at 549. However, based on the low standard for a motion to dismiss, the Court finds that Plaintiff has presented a claim for which relief can be granted.

As noted above, Plaintiff's First Amendment speech was not protected as he was speaking as an employee and not a citizen. Thus, the Court notes that the plaintiff has failed to state a claim upon which relief can be granted regarding his procedural due process "right" not to be terminated for exercising his First Amendment rights.

**Fourteenth Amendment: Substantive Due Process**

Plaintiff further claims that defendants' violations of his due process caused him to lose the property interest he had in his employment. Defendants assert that "[t]o the extent Smith seeks any type of redress based on a claimed property interest in his 'position of employment' as the NBSD's superintendent of schools, as opposed to an interest in compensation in his employment contract, Smith is barred from doing so." For purposes of this motion to dismiss, the Court has already found above that Plaintiff has sufficiently alleged a procedural due process claim based on his right of continued employment.

"To succeed with a claim based on substantive due process in the public employment context,

the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." Moulton v. City of Beaumonth, 991 F.2d 227, 230 (5th Cir. 1993). Defendants contend that Plaintiff has alleged no facts showing that the decision to terminate him was arbitrary or capricious. Plaintiff thoroughly lays out the facts he believes surrounded his termination. As such, Plaintiff has met his low burden on motion to dismiss.

*Conclusion*

Based on the previous analysis, the following claims remain against the following defendants:

- Injunctive relief and attorneys' fees against Bounds, Sanders, and Means in their official capacities.

- The only state law claims asserted by the plaintiff that survive the immunity provisions of the Mississippi Tort Claims Act are the defamation and slander claims against the School Defendants in their individual capacities.

- Equal Protection Claim against all defendants, individually and officially.

- Procedural Due Process claim for violation of his right to a hearing against the defendants and for injury to his reputation.

- Substantive Due Process claim against all defendants officially and individually for terminating him arbitrarily and capriciously.

The State Defendants additionally alleged that they were entitled to qualified immunity as individual defendants. Because they also joined in the School Defendants' Motion to Dismiss pursuant to Local Rule 16(b)(4), this Court will address all defendants' assertions of qualified

immunity by separate order and memorandum opinion. State Defendants Motion to Dismiss is thus granted in part, denied in part, and held in abeyance in part. Further, the defendants' Motion to Dismiss based on Rule 12(b)(6) is granted in part and denied in part.

SO ORDERED, this the 29th day of September, 2008.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**