**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**MAURICE SMITH**                                                                                   **PLAINTIFF**

**V.**                                                   **CAUSE NO.: 2:07CV51-SA-SAA**

**NORTH BOLIVAR SCHOOL DISTRICT, et al.**                        **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

This cause comes on for consideration on a Motion for Summary Judgment [101] filed by Defendants, Dr. Hank M. Bounds, Ms. Paula Means, and Mr. Howard Sanders (the "State Defendants"). Also in front of the Court is a Motion for Summary Judgment [103] by Defendants Bobbie Reid, Jefferick Butler, William Prince, Mary Collier, and Emma Williams (the "School Defendants"). The Court finds the following:

*Factual and Procedural Background*

The plaintiff Maurice Smith filed this suit on March 27, 2007, alleging a variety of claims arising out of North Bolivar School District's ("NBSD") recall of Smith as superintendent in December, 2005. Initially, Smith alleged violations of 42 U.S.C. § 1983, 1985, and 1986, the First and Fourteenth Amendments, and a host of state law claims. Pursuant to an Order on the Defendants' Motion to Dismiss [59], Order on Motion for Reconsideration [85], and Order based on Qualified Immunity [86], the Court narrowed Plaintiff's claims against the School Defendants in their individual capacities for procedural due process and defamation. Moreover, the Court limited Plaintiff's recovery against the State Defendants in their individual capacities for procedural due process, and their official capacities for injunctive relief and attorneys' fees.

After extensive discovery, the Defendants' filed motions for summary judgment. The

Defendants argue that under the Mississippi Statewide Accountability System, Maurice Smith had no protected property interest in his continued employment as the Superintendent of the North Bolivar School District. Alternatively, the Defendants assert that they are protected by qualified immunity because their actions were not objectively unreasonable in light of the state statute. The School Defendants also argue that the statements alleged to be defamatory are time-barred and do not comply with the legal standard for defamation. The State Defendants contend that the injunctive relief Plaintiff seeks is retrospective, therefore, not a viable claim under the Eleventh Amendment sovereign immunity exception. Thus, the State Defendants argue, Plaintiff's request for attorneys' fees must be dismissed as Plaintiff cannot prevail against the State Defendants.

*Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56( c). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable fact finder to return a verdict for the nonmoving party.'" Lemoine v. New Horizons Ranch and Ctr., 174 F.3d 629, *3 (5th Cir. 1999) (quoting Colston v. Barnhart, 146 F.3d 282 (5th Cir.), *cert. denied*, 525 U.S. 1054, 119 S. Ct. 618, 142 L. Ed. 2d 557 (1998)). Issues of fact are material if "the resolution of the issues affect the outcome of the suit under governing law." Id.

The Court does not, however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis omitted). Moreover, the non-moving party's burden to come

forward with "specific facts showing that there is a genuine issue for trial," Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, 37 F.3d at 1075.

*Discussion and Analysis*

*A. Procedural Due Process*

Plaintiff claims he was deprived of his property interest in continued employment without due process of law. To prevail, the Plaintiff must first show that he had a property interest in continued employment. "A governmental employee's interest in his continued employment is a 'property interest entitling him to claim federal due process protection if there are rules or mutually explicit understandings that afford to an employee a reasonable expectation to security of interest in his job.'" Shawgo v. Spradlin, 701 F.2d 470, 474 (5th Cir. 1983) (quoting Bishop v. Wood, 426 U.S. 341, 346 n.8, 48 L. Ed. 2d 684, 96 S. Ct. 2074 (1974)). The United States Supreme Court has stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

Such property interests are not created by the Constitution. Rather, they are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. Such an entitlement may be expressed in a contract (specifying

3

employment for a certain term absent just cause for dismissal), Perry v. Sindermann, 408 U.S. 593, 601, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972), or in a statute (for example, tenure statutes guaranteeing contract renewal absent just cause for dismissal), Slochower v. Board of Higher Education, 350 U.S. 551, 554, 76 S. Ct. 637, 100 L. Ed. 692, *modified on denial of reh'g*, 351 U.S. 944, 76 S. Ct. 843, 100 L. Ed. 1470 (1956). See Henderson v. Sotelo, 761 F.2d 1093, 1095-96 (5th Cir. 1985).

The sufficiency of the claim to a property interest in employment whether created by statute, contract, or implied contract must be decided by reference to state law. Bishop, 426 U.S. at 344, 96 S. Ct. 2074. By contrast, once it is determined that a property interest exists under state law, then, to determine what process is due for purposes of the due process clause of the Fourteenth Amendment, federal law must be examined. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

Plaintiff Smith asserts a property right stemming from his contract of employment entered into on July 1, 2004 and terminating on June 30, 2008. That contract of employment specifically provides that "the SUPERINTENDENT shall be subject to discharge for good and just cause(s)." Moreover, "[i]n the event of termination, the SUPERINTENDENT shall have the right to notice and a hearing before the BOARD as required by law."

The Defendants contend that the Mississippi Legislature amended any property interest that Smith might have arguably had by enacting the Mississippi Statewide Accountability System ("MSAS"), which contains the recall provisions underlying this matter. See Miss. Code Ann. § 37-18-1, *et seq*. The Defendants cite two cases for their proposition that Plaintiff has no protected property interest in continued employment pursuant to MSAS: Buford v. Holladay, 791 F. Supp. 635

4

(S.D. Miss. 1992); and Stodghill v. Wellston School District, 2006 WL 2673130 (E.D. Mo. Sept. 18, 2006). Both of these cases are distinguishable from the case *sub judice*.

In Buford, the plaintiffs held positions in the Department of Economic Development, which by statute, was later "reorganized" into the Department of Economic and Community Development. 791 F. Supp. at 637-38. In dealing with the statutory reorganization, the Mississippi Legislature exempted for a period of one year all personnel actions from State Personnel Board Procedures "in order to give the department flexibility in making an orderly, effective and timely transition to the mandated reorganization." Id. at 637 (quoting Miss. Code Ann. § 57-1-1(6)). The plaintiffs were subsequently terminated in the reorganization and brought suit alleging a property interest in continued employment with the State that could not be taken away without affording them procedural due process. Id. at 641. The court held that the legislative enactment of the reorganization statute abolished plaintiffs' property rights in continued employment with the state agency. Id. at 642. The court further noted that rights conferred legislatively may be withdrawn by the Legislature. Id.

In contrast, here, Smith's right to continued employment did not arise under statute. Smith's employment was premised on a contract providing for termination only for "good and just cause." Therefore, the Court's holding in Buford, that property rights conferred legislatively may be withdrawn legislatively, is inapposite here as Smith's rights were conferred by contract.

The second case cited, Stodghill v. Wellston School District, involved the termination of the long-serving superintendent of the defendant school district. 2006 WL 2673130, *1. Stodghill's contract included a provision that his employment could be terminated before the contract's set expiration "in accordance with the terms of the contract, applicable law, Board regulations and

policies." Id. Between 2003 and 2005, the district failed to meet accreditation requirements. Id. Under Missouri law, whenever a school district is unaccredited for two successive years, "its corporate organization shall lapse." Id. (citing Mo.Rev.Stat. § 162.081(1)). In June 2005, the state board of education declared the district "lapsed" and appointed a three member board to administer the district. Missouri law states that the appointed board "shall [not] be considered a successor entity for the purpose of employment contracts, unemployment compensation payment . . . or any other purpose." Id. (citing Mo.Rev.Stat. § 162.081(7)).

Stodghill alleged that in June of 2005, the district stopped paying his salary, and a member of the appointed board instructed the superintendent to vacate his office. Id. He brought suit against the school district alleging, *inter alia*, a procedural due process claim. Id. at *7. Specifically, the plaintiff contended his contract with the district created a property interest. Id. The court noted that often, "a statute will dictate whether a public employee has a property interest in employment, and will state whether and under which circumstances an employee may be terminated." Id. at *8. However, under Missouri law, "no such provision applies to school superintendents." Id. Accordingly, "[a]lthough . . . Missouri law[] does not provide for tenure rights, a property right was established by contract." Id.

Contrary to the situation with North Bolivar School District, however, the superintendent's contract in Stodghill did not specify that terminations could happen only "for cause." Thus, the Missouri court held that "[o]n its face, it is doubtful that plaintiff's contract created an 'entitlement to the job . . . sufficiently certain so as to amount to a constitutionally protected property interest.'" Id. (quoting Holloway v. Reeves, 277 F.3d 1035, 1038 (8th Cir. 2002)). Indeed, "[t]he terms of the contract, not the mere existence of one, are the source of the expectations of continued employment."

6

Id. *8 n. 9. The court held that to the extent that the plaintiff's contract did create a property interest in continued employment, that interest could not have survived the dissolution of the entity with whom Stodghill had contracted. Id. Thus, because the district had "lapsed," the superintendent had no property interest in continued employment and no cognizable due process claims.[1]

A public employee's contract which provides for termination only "for cause" creates a constitutionally protectable property interest. Robinson v. Boyer, 643 F. Supp. 975, 980-81 (N.D. Miss. 1986) (citing Thurston v. Dekle, 531 F.2d 1264, 1272 (5th Cir.1976), *vacated on other grounds*, 438 U.S. 901, 98 S. Ct. 3118, 57 L. Ed. 2d 1144 (1978)). Having been created, the property interest in employment can not be destroyed without due process of law. Id.

Since under his contract of employment, Smith could be terminated only for cause, he had a protected property interest in employment until June 30, 2008. Because of this property interest, Smith was entitled to receive (1) notice of the reasons for his termination and (2) an effective opportunity to rebut those reasons. Thurston, 531 F.2d at 1273; Russell v. Harrison, 632 F. Supp. 1436, 1441 (N.D. Miss.1986). According to the Fifth Circuit, effective rebuttal means "giving the employee the right to respond in writing to the charges made and to respond orally before the official charged with responsibility of making the termination decision." Glenn v. Newman, 614 F.2d 467, 472 (5th Cir.1980).

On October 14, 2005, Superintendent Smith received notification by letter that the Mississippi Department of Education was sending an independent audit team to the NBSD to investigate compliance with accreditation standards. The letter also noted that if deficiencies were

---

[1] The NBSD School Board was never recalled or replaced under the MSAS. Therefore, Plaintiff's contract with the Board is still enforceable.

found, "you will be notified in writing and given thirty (30) days from the receipt of notification to provide a written response." The NBSD was also evaluated during this same time period in a Priority School Assessment pursuant to the MSAS. These auditors specifically appraised the superintendent's performance as part of its report, noting that the Plaintiff "demonstrated unsatisfactory performance overall on performance standards."

Dr. Hank Bounds sent a letter to Plaintiff on November 9, 2005, confirming a meeting to be held with the NBSD Board, Plaintiff, and himself to discuss the results of the audit. Bounds noted:

> The results of these audits raise serious concerns and require me to alert the Mississippi Board of Education regarding the Board's responsibility to declare, given the circumstances, a state of emergency within the North Bolivar School District. The authority of the Board of Education to address an emergency situation is found in Sections 37-17-6 and 37-18-7 of the Mississippi Code of 1972.

In his deposition, Plaintiff acknowledged that even prior to this letter from Dr. Bounds, he was aware that the Mississippi Statewide Accountability System provided for a recall of the superintendent and board of trustees upon the Governor's declaration of a state of emergency.

On November 14, 2005, the NBSD Board and Plaintiff met with Dr. Bounds to discuss the results of the evaluation, the appointment of a conservator, the recall process, and the state of emergency proclamation to be issued by the Governor.

At the Mississippi Board of Education's regular monthly meeting, held on November 17, 2005, the findings of the on-site evaluation of NBSD were discussed. The State Board specifically discussed whether it should request the Governor to declare a state of emergency within that school district. Plaintiff was present at that meeting. Smith testified that there was no question in his mind after that meeting that the State Board was going to request a declaration of a state of emergency, thus subjecting the superintendent and board of trustees to a recall. The Mississippi Board of

Education voted unanimously to issue the request to the Governor on November 18; the Governor issued the Proclamation on November 22, 2005.

Plaintiff and the NBSD board members were officially notified of the state of emergency declaration by letter from Bounds. Bounds outlined that "the Board approved a motion submitting a request to the Governor asking that the members of the board and the superintendent of the North Bolivar School District be subject to recall and that the Governor declare a state of emergency in the North Bolivar School District." Moreover, Bounds explained that the Governor's Proclamation established that "a state of emergency exists in the North Bolivar School District and that the members of the District's board and the superintendent be subject to recall." Bounds further noted the consequences of the State Board and Governor's actions by outlining the statutory recall procedures that would go into effect and attaching a copy of the applicable statutory provision to the letter.

On December 7, 2005, Bounds met with Plaintiff and the NBSD board members to present the findings of the on-site audits. In that special board meeting, a motion to enter into executive session to discuss the superintendent's employment was announced and seconded. No action was taken against Maurice Smith in that executive session. Smith was not invited to participate in that executive session. Bounds also met with members of the community in a town hall meeting format at which the Plaintiff was present that same day.

At the NBSD board's next regular meeting, on December 12, 2005, the Board again entertained a motion to enter into executive session to discuss the superintendent's evaluation. The Board minutes reflect that "[a]fter a lengthy discussion, consideration of Mississippi Code 37-18-7, and legal counsel from the School Board Attorney, the Board's President submitted to the Board the

9

question of the Superintendent's retention or dismissal." Thereafter, the Board voted four to one to dismiss the superintendent. This executive session was, again, a closed door event at which Plaintiff was not allowed to attend or participate.

Procedural due process is a flexible concept whose contours are shaped by the nature of the individual's and the state interests in a particular deprivation. Caine v. Hardy, 943 F.2d 1406, 1411-12 (5th Cir. 991). Ordinarily, government may effect a deprivation only after it has accorded due process, but the necessary amount and kind of pre-deprivation process depends upon an analysis of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Though the state must, for instance, accord a public employee "some kind of hearing" before termination, this may consist of no more than a meeting at which the employer states the grounds for dismissal and gives the employee an opportunity for rebuttal. See Loudermill, 470 U.S. at 546, 105 S. Ct. 1487. The Fifth Circuit has countenanced the dispensation of a pre-termination hearing when: (1) the deprivation is directly necessary to secure an important government or general public interest, (2) there is a special need for very prompt action, and (3) the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. Breath v. Cronvich, 729 F.2d 1006, 1010 (5th Cir.), *cert. denied*, 469 U.S. 934, 105 S. Ct. 332, 83 L. Ed. 2d 268 (1984). Given

Smith's position as Superintendent in an under-performing school district, a need for prompt action existed and such action was in the public interest. See Pickering v. Bd. of Education, 391 U.S. 563, 570, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) (difference of opinion between teacher and Board as to preferable manner of operating school district was clearly an issue concerning general public interest).

The Court has extensively reviewed the statutory provisions of the Mississippi Statewide Accountability System. In conjunction with the facts of this case, it is evident that once the state of emergency was declared, the NBSD school board was statutorily required to vote on the Superintendent's retention or dismissal from office. Miss. Code Ann. § 37-18-7(4)(c). The evidence is undisputed that the NBSD school board was responsible for the recall of Superintendent Smith, and none of the State Defendants were parties to Smith's employment contract.

There are two different actions at issue in this case: the Mississippi Department of Education's decision to enforce the Mississippi Statewide Accountability System and the NBSD school board's decision to terminate the Plaintiff.

As to the State Defendants' actions, that decision and attendant conduct was "non-adjudicatory." Thus, Plaintiff was not entitled to a due process hearing with respect to that decision. See Texas Faculty Assoc. v. Univ. of Tex. at Dallas, 946 F.2d 379, 383 (5th Cir. 1991). Moreover, the State Defendants' conduct did not "deprive" Smith of any protected interest. Id. (outlining the four elements necessary to trigger the procedural due process guarantee: "(1) a state actor (2) deprives (3) a person (4) of a protected interest"). As noted above, Smith's contract was between the Superintendent and the NBSD school board, not any of the State Defendants. Furthermore, the school board is the entity statutorily empowered with the right to make school personnel decisions.

Miss. Code Ann. § 37-7-301. Accordingly, the procedural due process claims asserted against the State Defendants are dismissed.

The School Defendants' actions, however, did require a due process hearing. It is undisputed that Smith was not allowed to be present during the school board's executive sessions. It is within those sessions that the Superintendent's job performance was discussed, and it was in one of those sessions that the ultimate decision to terminate him was made. Smith was not given the opportunity to confront the evidence against him or rebut those assertions made in the confines of the executive sessions. However, Plaintiff's constitutional right to due process could have been satisfied post-termination, had the school board afforded such a hearing. See Caine, 943 F.2d at 1412 (holding that a brief pre-termination hearing is satisfactory as long as it is coupled with a more formal post-termination proceeding). It is undisputed that Smith's employment contract guaranteed "the right to notice and a hearing before the BOARD . . ." in the event of termination. Plaintiff also requested a post-termination hearing by letter dated December 17, 2005, to the NBSD school board members. Accordingly, the individual School Defendants did not act objectively reasonable in failing to hold a post-termination due process hearing. Thus, these Defendants are not protected by qualified immunity, and Plaintiff's procedural due process claim against them survives.

*B. Defamation*

Plaintiff also filed a defamation cause of action against most of the School Defendants. In particular, the Plaintiff contends that Defendants Reid, Collier, and Williams made statements against him during the recall process. Specifically, Plaintiff contends that all statements were made at or before the December 12, 2005, board meeting at which he was recalled.

Mississippi Code Section 15-1-35 provides that "all actions for . . . slanderous words

concerning the person or title . . . and for libels, shall be commenced within one (1) year next after the cause of such action accrued and not after." Plaintiff contends that his defamation claim is not barred by the statute of limitations because it is a continuing tort. A continuing tort involves a repeated injury and the cause of action begins to run from the date of the last injury, thereby tolling the statute of limitations. See Smith v. Franklin Custodian Funds, Inc., 726 So. 2d 144 (Miss. 1998). However, "an action for libel or defamation accrues at the time of first publication for public consumption." McCorkle v. McCorkle, 811 So. 2d 258, 265 (citing Forman v. Miss. Pub. Corp., 14 So. 2d 344, 347 (Miss. 1943)).

Plaintiff contends that the statements underlying his defamation claims were made public in school board meetings by Reid, Collier, and Williams. He also admits that these statements were made on or before December 12, 2005. Plaintiff did not file suit until March 27, 2007. Accordingly, Plaintiff's claims for defamation are barred by the one year statute of limitations found in Mississippi Code Section 15-1-35.

*C. Injunction and Attorneys' Fees*

The Plaintiff also seeks injunctive relief and attorneys' fees against the State Defendants in their official capacities. Specifically, Plaintiff seeks reinstatement, backpay, lost wages, and rehabilitation of his professional career. The State Defendants contend that most of Plaintiff's requests are for retrospective relief, which is not accorded under the Eleventh Amendment. The one claim that is for prospective relief, reinstatement, the State Defendants contend they are powerless to provide. Therefore, the State Defendants seek to have this cause of action against them dismissed.

Indeed, the State's Eleventh Amendment sovereign immunity bars the recovery of monetary damages under Section 1983. Alegria v. Williams, 314 Fed. Appx. 687, 691, (5th Cir. Mar. 12,

2009). This immunity extends to Plaintiff's official capacity claims against Bounds, Means, and Sanders. Thus, to the extent that Plaintiff requests monetary damages against the State Defendants, those claims are denied.

Mississippi Code Section 37-7-301 imbues to all school boards the power to select all school district personnel. Moreover, as noted above, the State Defendants were not privy to the contract entered into between the NBSD school board and Maurice Smith. Therefore, to the extent Plaintiff requests reinstatement, the State Defendants are unable to provide such relief.

Plaintiff also requests that the State Defendants hold a hearing to "rehabilitate" his career. Other district courts have encountered such requests and have deemed them "non-prospective relief." See McWhinney v. Prairie View A&M Univ., 2006 WL 2253456, *3 (S.D. Tex. Aug. 7, 2006) (request for a declaration that the defendant's actions were unlawful was a "non-prospective declaration that the Court cannot grant"); Martin v. Tex. Dep't of Protective & Reg. Servs., 2005 WL 2095194, *7 n.3 (S.D. Tex. Aug. 30, 2005) (declaration that defendant's actions were wrongful was non-prospective relief); Adler v. Pataki, 204 F. Supp. 2d 384, 390 (N.D. N.Y. 2002) (dismissing requested declaration that "Plaintiff was . . . wrongfully terminated and that Defendants' conduct was illegal" because "such a declaration would serve no prospective purpose and, thus it is barred by the Eleventh Amendment."). Accordingly, under the Eleventh Amendment, such relief is not afforded and shall be dismissed.

Because all claims against the State Defendants have been thus dismissed, Plaintiff's claim for attorneys' fees must also fail. Dean v. Riser, 240 F.3d 505 (5th Cir. 2001) (award of attorneys' fees to prevailing party within court's discretion). Thus, the State Defendants are dismissed as parties to this suit.

*Conclusion*

Under Plaintiff's contract of employment, Plaintiff's entitlement to continued employment is a property interest protected by the Fourteenth Amendment. Accordingly, Plaintiff was due some procedural due process either prior to or after his termination. Because the State Defendants were not directly responsible for Plaintiff's deprivation of property interest, they owed no procedural due process to Plaintiff. Moreover, the claims against the State Defendants in their official capacities is dismissed as well because the claims asserted were for retrospective relief.

The Plaintiff has sufficiently shown that the individual School Defendants did not act objectively reasonable in denying Plaintiff's request for a post-termination hearing. Thus, Plaintiff's individual capacity claims against the School Defendants for violating his procedural due process survives. Plaintiff's claims for defamation and slander against those same Defendants is barred by the one year statute of limitations.

SO ORDERED, this the 20th day of October, 2009.

                                                   **/s/ Sharion Aycock**
                                                   **U.S. DISTRICT JUDGE**